So the next case on the calendar is the United States of America v. Dontrell Wise, 19-735. And we'll be doing this, is it fully or partly by Zoom? I think it was fully. It's fully, right? Here they are. Yes, here they are. No, no, no. On the calendar, right here. Yes. Very good. Now we see you. I was just not looking in the right place. So welcome, remotely, to Oral Argument. Thank you. For the appellant, we have Ms. Harrington. Can we hear from you? I understand you have, let me get this right, so you have 10 minutes. Are you reserving time for rebuttal or no? No, thank you. Okay, perfect. So why don't you proceed. Thank you. All right. Good afternoon, Your Honors. May it please the Court. My name is Jillian Harrington, as you said, and I was assigned by this Court to represent Defendant Appellant Dontrell Wise on this direct appeal. I did not represent Mr. Wise in the District Court below. I'd like to thank Your Honors for this accommodation to appear remotely on behalf of myself and the prosecutor. We greatly appreciate that, I know. As Your Honors are, of course, aware, we raised two issues in Mr. Wise's appellant's brief. The first issue is whether the government proved Mr. Wise's guilt of the crimes charged beyond a reasonable doubt. And the second issue that we raised is whether the District Court erred in allowing the expert testimony of Special Agent McHugh regarding the means and methods of drug traffickers. I'd like to start with the first issue, which is the sufficiency of the evidence. Mr. Wise was convicted of three separate drug trafficking, drug-related charges, excuse me, and the crux of his argument regarding Counts 1 and 3, which charged him with the possession and the conspiracy to distribute and possess the drugs that caused Amanda Jarczyk's death. It comes down to one simple question. And that question is really whether or not the government presented enough evidence to prove and to make that link beyond a reasonable doubt that Mr. Wise sold Brittany Ridgway the drugs that she then sold to Amanda Jarczyk and her friends. You're moving to that argument, not just the overall sufficiency question. You want us to focus on the sufficiency of the evidence relating to Jarczyk's death. I think that's a big part of it because it relates to two of the counts, which is whether or not the drugs that Mr. Wise allegedly sold to Brittany Ridgway, which she then allegedly sold to Jarczyk and Ocando, whether or not those are the same drugs. Ridgway testified. So how could it be that there isn't enough evidence? Well, she testified, first of all, we made, I think, a strong argument that she was far from a credible witness. No, I think we can leave that aside. That's really for the jury. Of course. Yes, Your Honors. But she testified that she bought some drugs from Mr. Wise on the 21st and or 22nd. She wasn't quite sure. The phone records show that there was some conversation between Mr. Wise and Ridgway or a connection, not necessarily between Mr. Wise and Ms. Ridgway, but between a telephone that he had been known to use, as well as others, and that that conversation or that communication was around the 16th. I'm sorry, if I could just perhaps ask you to focus your argument on this, just going back to, I think, what you just said to Judge Walker, let's assume for the sake of argument that the jury was allowed to credit the testimony of each of the witnesses put forward. And I know you don't agree with that, but let's, for at least this part of the argument, assume that to be true. Tell us then what is the link in the proof that is missing, assuming that the witnesses told the truth? Because I understand that if you say, well, the witnesses lied and the telephone records don't supply the link independently. But assume that we believe the witnesses. Is there, what is the missing link? Or if I'm wrong, are you saying, no, no, you know, your sufficiency argument does depend on the credibility of the witnesses, which would be a different argument and that would be fair. But just focus on the assumption that the witnesses are credible. What's missing? Okay, so focusing on that assumption, the big part that's missing is evidence at the scene. So Ms. Jarsic is found tragically dead in her friend Stephanie's home. The only piece of evidence related to drugs that were found in the home was a glassine envelope that had fentanyl residue in it. Now, there was testimony that that piece of evidence was that Ridgway testified that that was how the drugs were packaged. She testified that that was a similar envelope to the one that she uses. She couldn't say for certain that it was hers, just that it was similar to the one that she uses as well as similar. There was also testimony that it was similar to ones that were found in her home as well. However, the scene had obviously been cleaned up. There was no needle. That envelope was not found near Jarsic's body. There had been testimony that there was some kind of argument that... Do you think it would be irrational for a jury to conclude that after Ridgway testifies that she sold drugs to Jarsic and she sold it in this kind of an envelope and the envelope has fentanyl residue and fentanyl residue caused her death and it was found in her house, that it would be irrational for a jury to decide that that established a connection between the drugs that Ridgway sold and the death? I do because we don't have that final connection. We don't know. Even if we take for the sake of this argument, as your Honor said, that Ridgway was credible and that Ridgway sold drugs to Jarsic one day. The next day, she then made a sale to her friend, Stephanie. We don't know that those were the drugs that were used by Jarsic to cause her death. We don't know. The question is whether the inferences can be drawn based upon the live testimony of Ridgway, the packaging, the fact that she testified that this was the packaging in the to Jarsic in that package on the first day. And all of that together with the package there and the fact that these are the way wives' drugs are packaged, taken together, the totality, not just considering it piece by piece, but taking the totality together, why couldn't the jury reasonably find beyond a reasonable doubt that these were the drugs that caused her death? Even, your Honor? They came from Lodge. Even taken in its totality, there's just too much that we don't know. Too many questions that were left to send a man to prison for the rest of his life. There's too much here that we don't know if those were the same drugs that she used to overdose. We don't know if somebody gave her other drugs and that's why they got AWD. On that point, wasn't there testimony that Amanda Jarsic didn't have access to a car so she couldn't go out and buy drugs and that the whole reason she turned to Ridgway, who turned to Wise, is that the victim was unable to reach her regular drug dealer. So wasn't the only evidence of her access to drugs that she had access through Ridgway, who testified that she got them from your client? Am I characterizing the record accurately? Yes, you are, your Honor. But what we don't know and the big question and big gaping hole that I discussed in an appellant's brief and the government did not address is, why didn't they have the friend testify? We don't know what she did. We don't know her position in all of this. We don't know that Stephanie didn't reach out to another drug dealer. We don't know that Stephanie didn't have, or Jarsic for that matter, didn't have another drug dealer who dropped off drugs to them that day at Stephanie's house. These are all perfectly wonderful jury arguments to be made. But the government doesn't have to close off every avenue of investigation or the prosecutors don't have to put everybody on the stand. If they put on enough evidence on the stand from which the jury could conclude guilt beyond a reasonable doubt, they've done their job, haven't they? Of course, your Honor. But I think the piece that we have to parse out of what you just said is the proof beyond a reasonable doubt. If the government is presenting a case that has huge gaping holes in it, and it's true, these are arguments for a jury to listen to, for a jury to assess. But that's why we have review by this court, because quite frankly, sometimes juries get it wrong. Okay, well maybe it's like you run out of time, we should address the expert testimony question. So I guess I have the following question, which is, would it really be an abuse of discretion for the district court to say that the average juror wouldn't know what a distributional quantity of fentanyl was, or how fentanyl is packaged, or how drug dealers use rental cars, or trap phones, or separate the money and drugs? These all seem to be the kind of things that experts testify about, so why do you think jurors would have already known that? I think the problem with this case is twofold, on this issue, there are a lot of problems, but on this issue, I think the problem is twofold. The first is just a general issue that's happening in this circuit, which is, this type of testimony has been permitted under the federal rules of evidence, and in accordance with this court's precedents. It's just, it was originally allowed for good reason, for cases where the jury just can't figure this out. They're regular, normal, everyday people, they don't have access to this kind of information. The problem that we're encountering now is that the boundaries of this testimony has been stretched really thin, and that now we've gotten to the point where, as an appellate attorney, this is all I do is appeals and read transcripts all day. I'm seeing this in nearly every case that I'm reading. You're seeing what? You're seeing expert testimony? Yes. But why is this expert testimony the one that crossed the line? Because the expert testimony in this case, really all it did was mimic, or mirror, what the other witnesses were saying, what Brittany Bridgeway was testifying to. She testified herself that she would get large quantities, she would cut it in with B vitamins  Well, there was some overlap. There was some overlap. But what about the fact that you made the argument, or the trial lawyer made the argument, that when Wethersby and Wise were in the car, Wise had the money, Wetherby had the drugs, Wise couldn't be guilty. How can you be guilty of just possessing money? And so when that specific argument was made, why couldn't an expert come in and say it's commonplace for drug conspirators to play different roles and adhere to those different roles? You have a money man, you have a drug man, and that's just the way it's happening. So they're making distributions of drugs, collecting money, the money goes into Wise's pocket, the drugs come from Wethersby, and that's just the normal way of conducting an operation. That's pretty important evidence, in light of the fact that the defense makes the claim that Wise is just bystander, in fact, has money, which is not illegal. But the expert can draw the jury's attention, and the jury draws the jury's attention as to what the customs and practices are in the drug trafficking field. That helps to explain this whole thing. You say that it helps to explain it, Your Honor, but with all due respect, I say it's tell it in the jury how they should view this evidence. And that's an argument that can be made by the prosecutor or by the defense attorney how it should be viewed. Every expert, in one sense or another, gets on the stand and says something that's designed to make it easier for the jury to understand what's happening. And you could always say that, I suppose, that the expert is telling the jury how to decide a case, but that's not true when the expert is talking about the specific activities that relate to a specific kind of criminal conduct that the jury might not otherwise understand. Or the jury might come to a different conclusion that it is what it is. They're free to do it. That argument was made to them. They're free to do it. Well, you say that the prosecutor can make that argument, but how is the prosecutor supposed to make that argument except through expert testimony? If they want to make the argument that this is a custom and practice among, within drug operations. Well, I don't think that they can make that argument. That's true, Your Honor, that it's a custom and practice. But they could make the argument that this is a conclusion that can be drawn. So you're saying that prosecutors should have been limited to the idea, the prosecutor should have been limited to the idea, to arguing that in this particular case, you could infer that they separated the money and drugs, but it just shouldn't be put in front of the jury that as a general practice in these kinds of operations, you have a separation between the money and the drugs. That's your position? Yes, Your Honor, because what the government was able to do through very artful questions and very specific pointed questions was, this is what was done here. This is what drug dealers do. So they must be drug dealers or drug traffickers. And that is the problem with stretching the boundaries of this kind of testimony. This testimony is necessary in some cases when you have situations, for instance, where they're using coded language that might be necessary or when they're using a very sophisticated importation scheme of getting their drugs into America or into a particular part of the country. In those kind of cases, it may be necessary. In this kind of case where you had witnesses on the stand and Your Honor had pointed out that there's overlap, there was more than an overlap in this case. There were specific questions asked to respond to specific pieces of evidence such as that Mr. Wise was driving a rental car that had tinted windows. Did we really need an expert to say that he was driving, that drug dealers often tint their windows so that they can avoid apprehension or surveillance by law enforcement? It's just, it's gone too far. And I think it's time. Did Wise's counsel at the district court propose some kind of limiting instruction to limit the scope of the expert testimony? I know, I'm not quite sure that I have an answer to that question. I know that the government had put in its notice and it listed in very general terms what it would be presenting. And then it got really into the minutiae of mirroring what the facts were of this case, such as the rental car, such as the use of a phone that many drug dealers may share. It got into the real nitty gritty of the details of this case. And all it did was mirror what the fact witnesses or the so-called fact witnesses were saying. And all that served to do was bolster the government's case, which of course on many occasions this court has held is an improper purpose for such testimony. Well, another way to phrase it, I assume, is it didn't bolster the case but it corroborated the witnesses, right? Isn't that what a party bearing the burden of proof generally does? You have witness A testify to something and then witness B comes in and also testifies to the same thing. You wouldn't suggest that a party attempting to meet its burden of proof is somehow bolstering its case in some improper way when it introduces additional evidence to prove the thing it's obliged to prove, correct? Yes, Your Honor, but in the case where you're bringing in an expert in this type of case that is not the purpose that it's supposed to be used for. I know that I've gone over. I thank you very much for your accommodation. But thank you very much for your argument. We appreciate it. And now we will hear from the government. Ms. Richards, please. Thank you, Your Honors. May it please the Court. I represent the United States of America on this appeal. Returning then, with regard to the first issue, I think Your Honors made my case for me. I would note just that Judge Minasci nicely summed up the evidence that was present here. There was significant evidence against, in favor of the jury's finding and in favor that made the proof here beyond a reasonable doubt. The jury, as Judge Walker noted, was indeed permitted to draw inferences. This wasn't a case where we had videotape evidence of the exact transaction or the exact moment of death. But what we did have was testimony that said that there was no other source for the drugs, that the baggie that was found at the same time as the investigation began, when the body was found, was matched what the users had purchased. There was no car available. There was no other drug dealer available. Those things were eliminated in terms of evidence, in terms of possible other avenues for obtaining the fentanyl, the lethal amount of fentanyl. And based on all those things, the jury was well within bounds in finding this defendant guilty on all three counts. The court on this review is in fact limited to assuming that the jury credited the witnesses' testimony. So calling the witnesses incredible doesn't yield a different result here. Setting forth a lawful basis for his presence in Pennsylvania doesn't change the result here. Similarly, regarding the phone records, the traffic stops, the testimony of the special agent, the other things that are listed with regard to the challenge to the sufficiency of the evidence, none of those things can change the outcome here, where this court's review is limited as it is to viewing the evidence in the light most favorable. Ms. Richards, I just have one question. I think I can anticipate your answer, but I'd like to hear it from you. My understanding is that the witness Ridgway thought she was dealing in heroin and delivered the drugs to Jarsik believing it was heroin, but it wasn't. Is that accurate? Yes, Your Honor. And I take it that your point is that it doesn't matter here, because you don't have to, as long as, if you're dealing in a controlled substance, that's enough. You don't have to know precisely what you're trafficking in. Correct. And sadly here, Your Honor, this defendant was indeed made aware of the fact that other occasions, on other occasions, what he'd sold was determined, in fact, to be fentanyl, not heroin. And that's not, I mean, not that he was going to disclose that to his purchasers, but it was his, I mean, that does sort of tip things also. He knew that what he was selling had already been traced and substantiated to have been fentanyl. So yes, Your Honor's correct. The fact that the buyer didn't know doesn't matter. I have one question I'm going to ask you based upon your extensive knowledge of drug trafficking. And that is, could you compare the properties of fentanyl and heroin? Fentanyl is more problematic, right, or less? It's more likely to lead to an overdose than heroin? And I think that is something that the expert testified to, Your Honor. With regard to that matter, I wouldn't be able to pinpoint the site directly in the record, but that is sort of the point, that the potency of fentanyl is a problem. It's what's driving the current crisis that we have. So, you know, setting this, I don't mean to speak, I mean, this case specifically we can focus on, but just generally, yes, that it results in a need for more hits, for more, quicker action hits. I'm not speaking about this case, again, just generally. My understanding, calling it expertise isn't quite right, but my understanding is that that's the difference, that it requires more use more often, and that drives the demand. Your bottom line here is that it has no legal significance, the difference? Unfortunately, no. So what about the question of the expert testimony? So if the government puts on a case that says, well, the defendant here did X, and then how does the expert testify saying, well, X is what drug dealers do, and therefore they're drug dealers, that would be a problem, wouldn't it? Well, I respectfully need to adjust. I know you don't like it when I do this, Your Honor, but I think what Judge Giardini asked was kind of triggered an example in my mind. We have somebody testify that there was a phone call placed, for example. We don't just leave it at that. The witness doesn't say, oh, I called him. Then we look at the phone records. That's part of the investigative process. The government's obligated to cooperate from the get-go, the nature of the evidence that's presented to it by certain witnesses, or all witnesses, frankly. And so if somebody says, I made a phone call, then we pull up the phone records, and we get those phone records, and we admit those, too. Now, that's corroborative. That's not bolstering. That's not improper. Can I ask, because we've tried to distinguish between what's permissible and impermissible in the past, I trust that if your witness had been asked, the expert witness had been asked, something along the lines of, Mr. Wise was found in a car containing money in his pocket with a gentleman who also had fentanyl in his pocket. Question to you, witnesses, is that consistent with drug dealing? And how? That would be a problem, right? Thank you. That's exactly the, right. It would be a problem. And that's exactly what I wrote. He wasn't asked, within a reasonable degree of certainty, based on your expertise, was this conduct violative of blah, blah, blah statute. That wasn't the question that was posed, right. The question was, with regard to his knowledge, his experience, what is it specifically with regard to fentanyl? He was also asked about the use of traps. He was asked about social media. He was asked about potency. And then the methodology has been- And presumably you're not asking your expert witness in a case like this how, you know, Mexican kingpins escape from prisons from tunneling out, right? You don't have an El Chapo case. You're not going to start asking them about how, you know, opium is cultivated somewhere, right? No. I mean, I believe maybe that's appropriate. I want to say maybe some case, but not this case. Without binding you in any future cases. In this, thank you. No, and I think that that's what makes us different from the cases that this court has found in the past. And I've been doing this for 20 years. And I remember in the past, we did have problems where we presented a case agent to offer such testimony. And some of the case law materials certainly call that out as being improper. And that's not what happened here. What happened here is we had somebody who did have background training and experience, but not with regard to this case. And actually, on that point though, can I ask you, I was a little surprised when I saw that this witness had been shown some of the evidence involved in the case. And I thought the general practice was not only to select an agent who had not been involved in the case,  and I guess I was curious. I don't know that it's necessarily fatal to the issue for you, but why that was done, or why that would be done? I'm not sure if Your Honor has drawn the distinction between that having been done at trial. My understanding was that the first time that he saw that evidence was at trial. At trial, okay. If that's the distinction for Your Honor, I make that distinction. Okay, I may have missed that distinction. I don't think that was proper. Okay. And if I'm wrong about that, or if there is some basis on which this Court finds that the admission of the expert's testimony was erroneous, any aspect of it whatsoever, or altogether, I would fall back on the harmless error argument. That to the extent the evidence was before the Court, through other witnesses and other evidence, it was more than sufficient to have led to a conviction. It would be unfair to say that we couldn't put on that witness just because we had sufficient other evidence, obviously. We can, where the challenges were made over and over and over again to the credibility of the witnesses, and the lack of... Why don't you just say something about why it's the appropriate subject for expert testimony. So why couldn't we have what opposing counsel suggested, which is the prosecutor should be eliciting testimony about how in this case you could infer that they separated the money and the drugs as opposed to testifying to that point as an expert? I'm not sure what witness could have done that. So why is it beyond the kin of the average juror to understand that drug dealers might separate the money and the drugs? Why is it that you need an expert testimony to talk about that as opposed to just talking about it in the individual case? Again, Your Honor, I don't know what other witness would have testified to that, and I'm not so sure, I don't think it's fair, frankly, to suggest that everybody is as familiar with these things as we all unfortunately are. I don't know that that's an accurate or fair representation, especially here as it did relate to this... Well, as I said, the various topics. I hear Your Honor's question with regard to separation of the person carrying the money versus the person carrying the drugs, but that was something that was going to be relied on and anticipated it would be relied upon as a defense here. That wasn't something that we just presented. It was something that we knew was going to come up. He didn't do it. The other guy did it. He's the one who had the drugs. He's the one who had the... It just doesn't... And there was a reason why he had the money. I mean, it just doesn't... That's not fair to the government's case to suggest when there was no other witness who could have testified to that fact or to the reason why one had the drugs and one had the money. All right. Thank you, Ms. Richards. Any last thing you need to add or... No? No, thank you, Your Honor. I appreciate it. Okay. Thank you to both of you, counsel. We appreciate your appearing remotely today. Thank you very much for your arguments, and we will take the case under advisement. Thank you, Your Honor.